Sidney Hammer et al., as Executors of Max Hammer, Deceased, et al., Appellants, *v.* John N. Rosen, Respondent.

First Department, February 3, 1959.

*D. George Paston* for appellants.

*Harry A. Gair* of counsel (*Benjamin H. Siff* with him on the brief; *Martin, Clearwater & Bell,* attorneys), for respondent.

MEMORANDUM. The jury's finding that the defendant, a psychiatrist, had not undertaken by contract to warrant a cure for the plaintiff incompetent of schizophrenia within a few months is entirely justified by the record. The cause of action for fraud, which is closely dependent upon the contract cause, was properly dismissed by the court and is in any event not supported by proof. Plaintiffs did not establish prima facie a cause of action for malpractice. It is not shown that the treatment given by defendant was not consistent with good stand-

ards of professional judgment addressed to the patient's psychiatric problem. Before defendant undertook the care of this patient at the persistent solicitation of her parents, she had undergone radical psychiatric care, including over 150 electric shock treatments without improvement. It is not disputed that defendant's '' direct analysis '' treatment, making no use of shock or surgery, initially improved the patient's condition. That the improvement was not permanent seems to have had a complex causation. We see no basis in the record to justify a finding of malpractice.

The judgment should be affirmed, with costs.

McNALLY, J. (dissenting in part). The dismissal of the third cause of action should be vacated and a new trial had thereon.

It is conceded that at the conclusion of defendant's treatment between 1948 and 1955, involving expenditures of over $55,000, the condition of the patient plaintiff had not improved. The lack of improvement despite the time lapse establishes regression rather than stabilization of her condition. Prior to 1948 the patient had been treated extensively and intensively by various psychiatrists and at institutions specializing in the treatment of neurotics and psychotics. Said treatments included a minimum of 200 shock treatments.

Defendant was licensed to practice medicine in the State of New York in 1928; he commenced the practice of the specialty of psychiatry in or about 1945, about three years prior to the time he was retained to treat the patient. Preliminary to his specialization in psychiatry, the defendant had been a resident of Brooklyn State Hospital for six months and a resident of New York Psychiatric Institute and Hospital for a period of one and one-half years. It was brought to the attention of the patient's family that the defendant made claims to dramatic successes in the treatment of schizophrenic patients. The defendant was sought out, requested to and did agree to treat the patient.

Nurse H. Louise Wong, who attended the patient for 12 days during September, 1948, testified that on two occasions she took the patient to the defendant for treatment. On the first occasion she requested the defendant to permit her to be present. Defendant, stating that he did not allow anyone to be present during his treatment of the patient, refused, excluded nurse Wong from his office, locked the door and directed her to return at the end of an hour. Within 15 minutes thereafter nurse Wong heard screams which she identified as those of the patient emanating from the defendant's office. She returned,

attempted to gain access to defendant's office but was again excluded by defendant. After the completion of the treatment on the first occasion, nurse Wong observed that the patient's body was covered with bruises, and her clothes were torn and disheveled. There was no one in defendant's office except the patient and the defendant. Testimony regarding conversations between nurse Wong and the defendant was erroneously excluded.

Apart from the testimony of nurse Wong, there was ample evidence in the record of defendant's assaults of the patient on various occasions in the course of his treatments. Mrs. Hammer testified that after treatments she observed her daughter was "beaten up" and had "blue eyes"; that her daughter returned from treatments "black and blue". Mrs. Hammer also testified to conversations with the defendant wherein he stated that the assaults complained of were part of the treatment. In addition, Emma Reitz, a maid in the employ of the Hammers, testified to circumstances establishing that the defendant slapped the patient without justification during the summer of 1950 at Bolton Landing, N. Y.

Defendant's brief concedes that any mode of treatment of a schizophrenic which involves assaults of the patient is fantastic. It is doubtful that defendant can or will attempt to justify the assaults as a constituent element of a recognized method of therapy. Where, as here, common sense suggests the incompatibility of physical assaults of the patient on the part of the treating physician with the proper medical treatment of a schizophrenic, expert medical opinion evidence is not required to establish malpractice prima facie. (*Meiselman* v. *Crown Heights Hosp.*, 285 N. Y. 389, 396.) Moreover, on this record, defendant's method of treatment of the patient is not clear. There is much suggesting the unorthodox and, apart from his own self-serving conclusory claims and the hearsay approval of others, nothing to establish that defendant's method of treatment was in accordance with recognized and established medical and psychiatric procedures. Defendant suggests and attempts to argue that if the assaults took place, they were justified as a matter of self-defense. The short answer to this is that the record does not establish such a defense and, in any event, it was an issue for the jury and not a ground for the dismissal of the cause of action.

Finally, defendant argues that the treatment was knowingly and freely consented to by reason of the fact that the patient's mother testified that if beating was a means of cure, she was

agreeable to the treatment. On this proposition defendant cites *Kirschner* v. *Keller* (70 Ohio App. 111). That case involved treatment of the plaintiff by a chiropractor for a condition of epilepsy. Plaintiff had been using for many years phenobarbital as a palliative. The defendant, in accordance with the precepts of his profession, manipulated the plaintiff's spine and advised discontinuance of the use of phenobarbital. Plaintiff's claim was that the discontinuance of the use of the drug resulted in more frequent convulsions than during the time he had been using the drug. There was no claim that defendant's manipulation of plaintiff's spinal column had been harmful. The court there held that the plaintiff had voluntarily submitted to the defendant's treatment knowing that his profession did not believe in the use of drugs. The instant case is altogether different. Defendant does not contend that assaulting the patient was part of the treatment. He seems to contend otherwise. Furthermore, Mrs. Hammer's statement is not binding upon her daughter and obviously was made on the assumption that defendant was pursuing a recognized method of treatment.

The dismissal of the third cause of action should be vacated and a new trial had thereon, and the judgment appealed from should be otherwise affirmed.

RABIN, J. P., M. M. FRANK, VALENTE and BERGAN, JJ., concur in memorandum; McNALLY, J., dissents in part in opinion.

Judgment affirmed, with costs.